**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

In re:

                                                    Case No. HT 13-06474
STEVEN JON WILCOX,                                  Chapter 7

        Debtor.

_____/

**MEMORANDUM OF DECISION AND ORDER**

        PRESENT:    HONORABLE SCOTT W. DALES
                    Chief United States Bankruptcy Judge

## I.  INTRODUCTION

*Pro se* debtor Steven Wilcox (the "Debtor") filed a "Motion for Rule to Show Cause"

(DN 70)[1] in his chapter 7 case on March 3, 2014, seeking an order to show cause why the court

should not enter a further order finding the Michigan Department of Corrections and John Simon

(together, the "MDOC")[2] in contempt for violating the court's discharge injunction by deducting

funds from the Debtor's MDOC-managed trust account (the "Trust Account").  *See* 11 U.S.C.

§§ 105(a) and 524(a)(2).  The court entered its Order to Show Cause on March 28, 2014 (the

"Show Cause Order," DN 76), directing MDOC to explain why the court should not find it in

contempt.  MDOC filed its Response on April 25, 2014 (the "Response," DN 79), supported by

affidavits from MDOC staff explaining recent activity in the Debtor's Trust Account.  *See*

Response, Exh. A, Affidavit of Melody A.P. Wallace ("Wallace Affidavit"); Response, Exh. B,

---

[1] The Debtor also filed a Supplement to the Motion (DN 73), as well as three additional "verified motions for order of contempt" (DNs 75, 78, and 80 filed March 24, 2014, April 18, 2014, and April 28, 2014, respectively).  In each motion, the Debtor alleges, by unsworn statement under penalty of perjury, MDOC's continuing violation of the discharge injunction.  This Memorandum of Decision addresses and resolves all of these motions (collectively, the "Motions").

[2] The Debtor is currently incarcerated at a correctional facility operated by MDOC.  The Debtor alleges that John Simon is the business manager at that facility.

Affidavit of Kristen Cassidy ("Cassidy Affidavit - 1").  The Debtor filed a Reply to MDOC's Response on May 2, 2014 (the "Reply," DN 81) which he supports with his declaration under penalty of perjury.[3]  The court issued an Order to Supplement Response on May 8, 2014 (DN 82) directing MDOC to provide additional documentation or testimonial evidence.  MDOC filed that Supplemental Response on May 23, 2014 (the "Supplemental Response," DN 84) supported by a second affidavit from Kristen Cassidy ("Cassidy Affidavit - 2").

## II.  JURISDICTION

The court has subject matter jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334(a), and the case has been referred to the court by the United States District Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.).  This contested matter is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate) and (I) (determination as to the dischargeability of particular debts).

## III.  FACTS

The Debtor filed his voluntary petition for chapter 7 relief on August 14, 2013 (the "Petition Date," DN 1) and the court entered his discharge on January 27, 2014 (the "Discharge Order," DN 62).  The court closed the Debtor's case on February 14, 2014, but reopened it again on March 5, 2014 (DN 71) to consider the Debtor's Motions.

The Debtor alleges that MDOC made the following deductions from his Trust Account to recover its discharged debt:

- **$14.23** deduction on February 14, 2014;[4]
- **$12.50** deduction on March 10, 2014;[5]

---

[3] 28 U.S.C § 1746.

[4] Motion For Rule to Show Cause (DN 70) at 1, ¶ 4.

[5] Debtor's Supplement to Motion for Rule to Show Cause (DN 73) at 1, ¶¶ 1, 2.

- **$25.45** on March 14, 2014;[6]
- **$15.38** deduction on April 14, 2014;[7] and
- **$30.00** deduction on April 23, 2014.[8]

In its Response, MDOC admits that it continued collecting -- *and plans to continue collecting* -- two pre-petition debts from the Debtor's Trust Account following his discharge, absent an order from this court directing it to do otherwise. The first is a debt MDOC describes as a debt "for destruction of state property" in the original amount of $5,549.42 (the "Property Destruction Debt"). Response at 3-4. Notably, MDOC states that it did not apply any of the funds deducted from the Debtor's Trust Account thus far to this debt because "his other debts received priority payment." Cassidy Affidavit - 1 at 3, ¶ 6. The second debt represents the cumulative loans the Debtor received from MDOC for "legal supplies, notary services, and legal copies" (the "Legal Supplies Debt"). Response at 4.

Melody A.P. Wallace ("Ms. Wallace"), Manager of the Litigation Section of the Office of Legal Affairs, swears that MDOC initially ceased collection activities against the Debtor when it received notice of the Debtor's bankruptcy filing. Wallace Affidavit at ¶¶ 1, 3. After she received notice of the Discharge Order, and after consulting the Michigan Attorney General's office,[9] however, Ms. Wallace reactivated those debts on the Debtor's Trust Account, and resumed collection activity. Wallace Affidavit at 2, ¶¶ 4-6. Specifically, Ms. Wallace

---

[6] Debtor's Verified Ex Parte Motion or Order to Show Cause (DN 75) at 1, ¶¶ 4, 5.

[7] Debtor's Third Verified Motion for Order of Contempt and Sanctions Against Michigan Dept. of Corrections and John Simon (DN 78) at 2, ¶ 9.

[8] Debtor's Fourth Verified Motion for Order of Contempt and Sanctions Against Michigan Dept. of Corrections and John Simon (DN 80) at 2, ¶ 10.

[9] Ms. Wallace consulted with Juandisha Harris, a bankruptcy attorney in the Revenue and Collections Division of the Department of the Attorney General, who evidently advised her that certain MDOC debts were excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(17) and (19). Wallace Affidavit at 2, ¶¶ 4-6, and attached email. The court is surprised that the Attorney General would attach as an exhibit to MDOC's Response a document containing attorney-client communications, and even more so given the substance of the advice as explained below.

reactivated the remaining Property Destruction Debt in the amount of $5,527.60[10] and the Legal

Supplies Debt in the amount of $1,346.70.[11]   *Id*. at ¶ 6.  Ms. Wallace did, however, direct her

staff to release the Debtor's debts owed for "indigent postage and indigent loans" because they

were discharged in the Debtor's bankruptcy.  *Id*.

Kristen Cassidy ("Ms. Cassidy"), Account Technician in Prisoner Accounting, attached

the Debtor's current Trust Account Statement (the "Trust Account Statement") to her first

affidavit.  Cassidy Affidavit - 1 at 1-2, ¶¶ 1, 5.  The Debtor's Trust Account Statement details the

following deductions, summarized by the court, which MDOC made from the Debtor's account:

| DATE DEDUCTED | AMOUNT DEDUCTED | DATE DEBT INCURRED |
|---|---|---|
| 2/14/14 | $5.00 | 8/8/13 |
| | $3.90 | 10/2/13 |
| | $1.00 | 12/12/11 |
| | $1.24 | 1/25/12 |
| | $0.26 | 1/25/12 |
| | $0.30 | 3/9/12 |
| | $0.60 | 3/27/12 |
| | $0.20 | 4/9/12 |
| | $0.60 | 4/9/12 |
| 2/14/14 TOTAL | $13.10 | |
| | | |
| 3/10/14 | $0.30 | 4/9/12 |
| | $6.24 | 4/9/12 |
| | $0.80 | 4/12/12 |
| | $5.16 | 4/12/12 |
| 3/10/14 TOTAL | $12.50 | |

---

[10] Presumably, MDOC adjusted this amount to reflect pre-petition deductions it made from the Debtor's Trust Account and applied to the original $5,549.42 debt.  Ms. Wallace describes this debt as resulting from "a restitution order entered following a Misconduct Hearing on September 26, 2011."   *Id*. at ¶ 6.

[11] Ms. Wallace describes this debt as the cost of "legal supplies, notary services and legal copies" incurred by the Debtor between November 29, 2011 and July 10, 2013.  *Id*. at ¶ 6.

| DATE DEDUCTED | AMOUNT DEDUCTED | DATE DEBT INCURRED |
|---|---|---|
| 3/14/14 | $0.64 | 4/12/12 |
| | $0.42 | 4/19/12 |
| | $10.50 | 6/25/12 |
| | $9.10 | 6/5/12 |
| | $5.88 | 6/5/12 |
| 3/14/14 TOTAL | $26.54 | |
| | | |
| 3/18/14 | $0.88 | 6/5/12 |
| 3/18/14 TOTAL | $0.88 | |
| | | |
| 4/14/14 | $7.60 | 8/16/13 |
| | $0.24 | 8/30/13 |
| | $0.46 | 8/30/13 |
| | $1.32 | 8/30/13 |
| | $2.00 | 9/4/13 |
| | $0.46 | 9/5/13 |
| | $0.37 | 9/6/13 |
| | $0.09 | 9/6/13 |
| | $0.46 | 9/6/13 |
| | $0.46 | 9/6/13 |
| | $1.93 | 9/6/13 |
| 4/14/14 TOTAL | $15.39 | |
| | | |
| 4/23/14 | $0.79 | 9/6/13 |
| | $0.46 | 9/9/13 |
| | $0.34 | 9/11/14 |
| | $1.32 | 9/11/13 |
| | $0.30 | 9/13/13 |
| | $0.66 | 9/13/13 |
| | $0.10 | 9/24/13 |
| | $0.20 | 9/24/13 |
| | $0.20 | 9/24/13 |
| | $0.20 | 9/24/13 |
| | $0.50 | 9/24/13 |
| | $0.14 | 9/24/13 |
| | $24.79 | 10/2/13 |
| 4/23/14 TOTAL | $30.00 | |

Cassidy Affidavit - 1, Trust Account Statement at 4-6, 8-9.

The  Cassidy accounting also indicates that the debts currently on the Debtor's account were all incurred by the Debtor after October 2013 and are therefore, post-petition debts, not subject to discharge.  *See* Cassidy Affidavit - 1 at ¶ 5, attached Trust Account Statement at 1-2; 11 U.S.C. § 727(b).  These debts include a debt for $5,475.79 which Ms. Cassidy states is for "destroyed State property" that was "incurred after the bankruptcy was filed" (the "Disputed Property Destruction Debt").[12]  *Id*.  The Debtor alleges that Ms. Cassidy, by making this statement, has "committed perjury" because the statement is "patently untrue."  Reply at 3; attached Declaration of Steven J. Wilcox.  Because MDOC did not attach documentation supporting this "new debt" as it did for the Property Destruction Debt,[13] the court directed MDOC to supplement its Response with documentation or testimonial evidence regarding the details of the Disputed Property Destruction Debt.  *See* May 8, 2014 Order to Supplement Response (DN 82).

In its Supplemental Response, MDOC reported that it is unable to locate documentation regarding the Disputed Property Destruction Debt.  Supplemental Response at 2; Cassidy Affidavit - 2 at 2, ¶ 4.  Furthermore, MDOC now admits that the $24.79 deducted from the Debtor's Trust Account on April 23, 2014 related to this debt.  Supplemental Response at 2; Cassidy Affidavit - 2 at 2-3, ¶ 5.  MDOC voluntarily refunded $24.79 to the Debtor's Trust Account and also removed the Disputed Property Destruction Debt from that account.  *Id.*

With respect to MDOC's collection efforts, the Cassidy Affidavit - 1 supports the Wallace Affidavit in that Ms. Cassidy confirms she reactivated and removed certain debts listed on the Debtor's Account Statement on February 10, 2014.  Specifically, Ms. Cassidy reactivated

---

[12] MDOC alleges that this debt was entered onto the Debtor's Trust Account on October 2, 2013.  Supplemental Response at 2.  The documents do not establish, however, whether this debt arose before or after the Petition Date.

[13] Wallace Affidavit (attached Class I Misconduct Hearing Report).

a debt in the amount of $5,549.42 allegedly incurred for "property damage" as well as debts for "legal supplies, notary services, and legal copies." Cassidy Affidavit - 1 at ¶ 4. All other debts "were removed from his account." *Id.* All accounts were deactivated again on March 11, 2014, presumably in response to this court's order reopening the Debtor's chapter 7 case on March 5, 2014 (DN 71). *Id.*

## IV. <u>DISCUSSION</u>

The court's entry of the Discharge Order discharges the Debtor from all debts that arose before the Petition Date and, unless an exception to discharge under 11 U.S.C. § 523[14] applies, operates as an injunction against any attempts to collect on the remaining Property Destruction and the Legal Supplies Debts.[15]   11 U.S.C. §§ 524(a), 727(b).  Well-settled case law in our Circuit directs the court to construe exceptions to discharge narrowly in favor of the Debtor. *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298 (B.A.P. 6th Cir. 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999)); *see also Walker v. Tuttle (In re Tuttle)*, 224 B.R. 606, 610 (Bankr. W.D. Mich. 1998) (recognizing "the axiom that requires this court to construe exceptions to the bankruptcy discharge narrowly and in favor of the debtor") (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)).

---

[14] In this Memorandum of Decision, statutory references shall be to title 11 of the United States Code except as otherwise indicated.

[15] Both the remaining Property Destruction and Loan Debts are pre-petition obligations.  The Property Destruction Debt was assessed on September 26, 2011 and the Loan Debt was incurred by the Debtor between November 29, 2011 and July 10, 1013.  Wallace Affidavit at 2 – 3, ¶ 6.

**A.     Dischargeability of the Property Destruction Debt.**

MDOC argues that the Property Destruction Debt is non-dischargeable under § 523(a)(6).[16] That section excepts from discharge debts incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Although MDOC *may* have had an argument that this obligation was incurred because of the Debtor's "willful and malicious injury" to property, MDOC did not timely file a complaint for determination of non-dischargeability, which is specifically required under § 523(c)(1). That section provides:

> . . . [T]he debtor shall be discharged from a debt of a kind specified in paragraph . . . (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph . . . (6) . . . of subsection (a) of this section.

11 U.S.C. § 523(c)(1); *see* Fed. R. Bankr. P. 4007. The deadline for filing a complaint to determine non-dischargeability of a debt under § 523(c) was *December 9, 2013*. Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (DN 4). Because MDOC did not timely file a complaint regarding the Property Destruction Debt, this debt was discharged upon entry of the Discharge Order. MDOC specifically stated that none of the post-petition deductions from the Debtor's Trust Account were applied to this debt, and therefore, MDOC has not yet violated the discharge injunction as to this debt. Cassidy Affidavit - 1 at 3, ¶ 6. However, MDOC *will be* in violation of this court's Discharge Order if it makes any attempt to collect this debt from the Debtor's Trust Account, or otherwise, in the future.

---

[16] The court notes that although not argued by MDOC in the Response, Ms. Wallace declared under oath that she was advised by counsel that the Property Destruction Debt was non-dischargeable under §§ 523(a)(17) or (19). Wallace Affidavit at 2, ¶¶ 4-5. For reasons discussed more fully *infra*, § 523(a)(17) does not apply to except this type of debt from discharge. Furthermore, a plain reading of § 523(a)(19) reveals that it is only applicable to debts incurred in connection with federal, state, or common law securities actions. Presumably, for this reason, MDOC did not raise this defense in its Response.

**B.**     **Dischargeability of the Disputed Property Destruction Debt**.

The Debtor disputes MDOC's contention that he incurred the Disputed Property Destruction Debt after the Petition Date.  Reply at 3; attached Declaration of Steven J. Wilcox. The court notes that the amounts of the Disputed Property Destruction Debt ($5,475.79) and the remaining Property Destruction Debt ($5,527.60) are very close.  Furthermore, MDOC did not document this new Disputed Property Destruction Debt within the time prescribed, nor did the agency request additional time to do so.

In responding to the Show Cause Order, MDOC bore the burden of proving that the active debts on the Debtor's Trust Account are not discharged.  Although Ms. Cassidy alleges that the Debtor incurred the Disputed Property Destruction Debt post-petition, MDOC did not support that allegation with the documentation, as it did with the other Property Destruction Debt, in order for the court to determine that the debt arose post-petition.  Moreover, it is not clear from the Cassidy Affidavit -1, given the nature of her employment as Account Technician in Prisoner Accounting, how Ms. Cassidy would have any personal knowledge of facts giving rise to the Disputed Property Destruction Debt, as opposed to the fact that it appears on MDOC's records.  Because MDOC did not show cause why the court should not hold it in contempt with respect to this aspect of the controversy, the court concludes that the Disputed Property Destruction Debt was discharged under the Discharge Order and MDOC is enjoined from any future collection efforts as to this debt.

**C.**     **Dischargeability of the Legal Supplies Debt**.

MDOC argues that the Debtor's Legal Supplies Debt is non-dischargeable under § 523(a)(17).[17]  That section excepts from discharge the following types of debts:

---

[17] The court notes that Ms. Wallace declared under oath that she believed the Legal Supplies Debt was non-dischargeable under §§ 523(a)(17) or (19).  For reasons discussed in FN 16, *supra*, § 523(a)(19) is inapplicable.

> *. . . [F]or a fee imposed on a prisoner by any court* for the filing of a case, motion, complaint, or appeal, or for other costs and expenses *assessed with respect to such filing*, regardless of an assertion of poverty by the debtor under subsection (b) or (f)(2) of section 1915 of title 28 (or a similar non-Federal law), or the debtor's status as a prisoner, as defined in section 1915(h) of title 28 (or a similar non-Federal law) . . . ."

11 U.S.C. § 523(a)(17) (emphasis added). Although MDOC is correct that this section excepts from discharge prisoner filing fees and "other costs and expenses," a close reading of the statute reveals that this exception is limited to only those costs and expenses which are "imposed" or "assessed" by "any court." *Id.; see also, United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (statutory interpretation begins with the "language of the statute itself"). MDOC itself characterized the debt as money MDOC "loaned" to the Debtor for his "legal supplies, notary services, and legal copies related to court cases that he has." Response at 4-5. Being in the nature of a "loan," rather than a court "imposed" fee or an "assessed" cost or expense, the debt was discharged upon entry of the Discharge Order.

Although MDOC intentionally ceased activity on the Debtor's account to observe the automatic stay during the pendency of the Debtor's original and subsequent reopened bankruptcy case, clearly the Debtor's Trust Account Statement details deductions MDOC made from the Trust Account on account of the discharged Legal Supplies Debt. More specifically, the court finds that MDOC deducted the following amounts from the Debtor's Trust Account and directly applied those amounts to the pre-petition (discharged) Legal Supplies Debt:

| DATE DEDUCTED | AMOUNT |
|---|---|
| 2/14/14 | $ 9.20[18] |
| 3/10/14 | $12.50 |
| 3/14/14 | $26.54 |
| 3/18/14 | $0.88 |
| **TOTAL** | **$49.12** |

---

[18] $3.90 of the amount deducted on February 14, 2014 was applied to post-petition debt.

Under the precedents of our Circuit, a debtor who seeks to hold a creditor in contempt for violating the discharge injunction must "show[ ] by clear and convincing evidence that [the creditor] violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *In re Stewart*, 499 B.R. 557, 573 (Bankr. E.D. Mich. 2013) (*citing Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998)).  Because MDOC made these deductions in violation of the court's Discharge Order, and with knowledge of the Discharge Order, it is in contempt and must refund **$49.12** to the Debtor's Trust Account.  The court also finds that because MDOC applied deductions made on April 14 and 23, 2014 ($15.39 and $30.00, respectively) to post-petition debt that was not discharged in the Debtor's chapter 7 case, it is not required to refund these amounts to the Debtor's Trust Account.

**D.      MDOC's Contempt and Debtor's Request for Sanctions**

Based on the papers submitted including, especially, the affidavits of MDOC employees, the court finds MDOC in contempt of the Discharge Order.  Anticipating this finding, the Debtor urges this court to impose actual sanctions against MDOC for its actions, as opposed to merely ordering MDOC to return the improper deductions.  The court denies this request for at least two reasons.

First, the court's contempt power is civil, and the court is therefore limited to taking compensatory and coercive steps; remedies intended or designed to punish are not in the court's arsenal.  Although MDOC was willful and intentional when it deducted these amounts from the Debtor's Trust Account, it did so based upon ill-conceived and poorly researched legal advice, rather than as a "deliberate and contumacious" violation of the discharge injunction.  Debtor's Fourth Verified Motion for Order of Contempt and Sanctions Against Michigan Dept. of

Corrections and John Simon (DN 80) at 2, ¶ 11.  Second, the court accepts MDOC's statement in the Response that it will not collect the debts if this court determines they are non-dischargeable. This sufficiently suggests that MDOC's personnel did not intend to disobey this court's order -- and will abide by it in the future.

Nevertheless, the court may use its contempt power to compensate for violations of its orders, including the Discharge Order, and in this case the court will award the Debtor his actual costs associated with bringing the Motions, totaling $15.01.[19]

Finally, the court also denies the Debtor's request to hold MDOC's staff members personally liable for actions taken, presumably in the ordinary course of their duties at MDOC because it appears that they sought the advice of counsel.  Wallace Affidavit at 3, ¶ 7.  The violation of the court's injunction resulted most directly from the Attorney General's ill-considered response to their well-meaning request for advice.  Though the court expects more of the Attorney General's office, it will not hold MDOC staff members personally responsible for acting on the poor advice they received in this instance.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the remaining Property Destruction and Legal Supplies Debts owed by the Debtor to MDOC were discharged in the Debtor's chapter 7 bankruptcy case and MDOC was therefore enjoined from collecting those debts from the Debtor.  In addition, it appears that the Disputed Property Destruction Debt is the same debt as the Property Destruction Debt, given the lack of documentation differentiating them and Ms. Cassidy's lack of personal knowledge regarding the origins of the two debts.

---

[19] Debtor's Third Verified Motion for Order of Contempt and Sanctions Against Michigan Dept. of Corrections and John Simon (DN 78) at 2, ¶ 11 (total for first four filings - $6.88 for postage and $4.10 for envelopes, paper and photocopies); Debtor's Fourth Verified Motion for Order of Contempt and Sanctions Against Michigan Dept. of Corrections and John Simon (DN 80) at 2, ¶ 12 (additional $1.12 for postage and envelopes and $3.00 for copies).

Any and all amounts that MDOC has collected from the Debtor on account of these debts, including the $49.12 described herein,[20] must be credited to the Debtor's Trust Account. MDOC shall also credit the Debtor's Trust Account $15.01 for the costs and expenses he incurred in bringing the Motions.

NOW, THEREFORE, IT IS HEREBY ORDERED that MDOC is in contempt of the Discharge Order by taking action to collect the debts described in this Memorandum of Decision and Order.

IT IS FURTHER ORDERED that MDOC may purge its contempt by (1) crediting the Debtor's Trust Account with $49.12 within 14 days after entry of this Memorandum of Decision and Order; and (2) crediting the Debtor's Trust Account with $15.01 (representing the Debtor's costs and expenses associated with bringing the Motions) within 14 days after entry of this Memorandum of Decision and Order.

IT IS FURTHER ORDERED that MDOC is enjoined from making any further attempts to collect from the Debtor the remaining Property Destruction ($5,527.60), the Disputed Property Destruction ($5,549.42), or the Legal Supplies Debts ($1,346.70), by way of an offset against the Debtor's Trust Account, or otherwise.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon James W. Boyd, Trustee, the United States Trustee, the Michigan Department of Corrections, and Clifton Benjamin Schneider, Esq.

---

[20] MDOC has already voluntarily refunded $24.79 which was deducted from the Debtor's Trust Account and applied to the Disputed Property Destruction Debt.  Supplemental Response at 2; Cassidy Affidavit – 2 at 2-3, ¶ 5.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order by first-class United States mail upon the above-named Debtor at the addresses indicated below:

Steven Jon Wilcox
No. 223862
10274 Boyer Rd.
Carson City, MI 48811

END OF ORDER

**IT IS SO ORDERED.**

**Dated May 28, 2014**



Scott W. Dales
United States Bankruptcy Judge