UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
_____

In re:

STEVEN JON WILCOX,

                Debtor.

_____/

Case No. DT 13-06474
Chapter 7
Hon. Scott W. Dales

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                    Chief United States Bankruptcy Judge

I. INTRODUCTION

*Pro se* chapter 7 debtor Steven J. Wilcox (the "Debtor") seeks to hold two of his *pro se* creditors in contempt of the discharge injunction. More specifically, he alleges that although Michael Seiloff and Mary A. Comella (the "Creditors") were omitted from his schedules, they have violated the Debtor's discharge by commencing suit against him in Kent County Circuit Court to recover on their prepetition claims sounding generally in fraud and malicious prosecution.[1]

The effect of a bankruptcy discharge on creditors omitted from Schedule F and the mailing matrix raises complicated questions of statutory interpretation on which courts have reached various conclusions. As muddled as the courts are, the confusion among litigants, especially the unrepresented, is most certainly worse. Given the legal complexity and resulting confusion surrounding the law governing the discharge of debts owed to omitted creditors, and given the distinct possibility that the debts at issue are excepted from discharge in any event, the

---

[1] *See Comella et al., v. Wilcox et al.*, Case No. 14-10617-CZ (17th Judicial Circuit Court, Kent County, Michigan) (hereinafter the "Kent County Lawsuit").

court does not regard the commencement and prosecution of the Kent County Lawsuit as contempt of the discharge injunction in this case.

## II. JURISDICTION

The Debtor's case has been referred to this court by the United States District Court pursuant to 28 U.S.C. § 157(a). *See* LCivR 83.2(a) (W.D. Mich.). The dispute between the Debtor and the Creditors is a core proceeding, as it involves the effect of the Debtor's discharge on the claims of the Creditors, 28 U.S.C. § 157(b)(2)(I), as well as the court's inherent authority to enforce the discharge injunction. The court has "original and exclusive" jurisdiction over the case under 28 U.S.C. § 1334(a) although, as explained below, the Kent County Circuit Court has concurrent jurisdiction to determine whether the Creditors' claims are excepted from discharge.

## III. ANALYSIS

1. <u>Procedural History</u>

The Debtor filed his chapter 7 bankruptcy petition on August 14, 2013, and received a discharge under § 727 on January 27, 2014 (the "Discharge," DN 62). The court initially closed the case, but reopened it when the Debtor filed a motion to address unrelated allegations of interference with his Discharge at the hands of another creditor. After holding that creditor in contempt and requiring the contemnor to compensate the Debtor, the court again closed the case. While the case remained closed, the Creditors commenced the Kent County Lawsuit, prompting the Debtor to file a second motion to reopen the case (DN 94), which the court granted.

Shortly after the court reopened the case, the Debtor filed Debtor's Motion for Rule to Show Cause (DN 98), and in response the court issued the Order to Show Cause Re: Alleged

Violation of the Discharge Injunction (the "Show Cause Order," DN 99). The Show Cause Order directed the Creditors to explain why the court should not impose sanctions against them for contempt of the Discharge.

The Creditors responded to the Show Cause Order, and the court's follow-up order (DN 103) directing them to supplement their response by providing the bankruptcy court with a copy of the complaint previously filed in the Kent County Lawsuit. The Creditors have supplemented their response with voluminous exhibits as ordered (DN 110), and the court has determined to resolve the dispute without conducting a formal hearing.[2]

2. The Discharge Injunction and the Contempt Power

A discharge in bankruptcy, such as the Discharge in this case, "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt [discharged under section 727] as a personal liability of the debtor . . ." 11 U.S.C. § 524(a). Because a discharge "operates as an injunction," bankruptcy courts address violations of the discharge as they would treat violations of any other injunction, using their civil contempt powers.[3]

Under the precedents of our Circuit, a litigant who seeks to hold another in contempt for violating an injunction must "show[ ] by clear and convincing evidence that [the creditor] violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *In re Stewart*, 499 B.R.

---

[2] Despite his incarceration throughout the entire bankruptcy proceeding, the Debtor has successfully prosecuted his chapter 7 case to discharge and beyond, all without the benefit of counsel, and without leaving the confinement of the Michigan prison system. Along the way, the court has rendered numerous decisions in response to his copious filings without requiring him to appear in person, and the court likewise resolves the present controversy on the papers submitted.

[3] Bankruptcy courts have no criminal jurisdiction, and therefore no criminal contempt power — *i.e.*, no authority to punish disobedient parties. Instead, they use civil contempt powers to coerce compliance with their orders, or to compensate for disobedience, but not to punish. *In re Burkman Supply, Inc.*, 217 B.R. 223, 225 (W.D. Mich. 1998).

557, 573 (Bankr. E.D. Mich. 2013) (*citing Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998)).  Here, the Debtor must prove that the Creditors actually knew about the Discharge and that, through voluntary action, violated it.  *Gunter v. Kevin O'Brien & Associates Co. LPA (In re Gunter)*, 388 B.R. 67, 72 (Bankr. S.D. Ohio 2008).

The Debtor alleges that, shortly after the Creditors commenced the Kent County Lawsuit, he advised them about his Discharge by copying them on a letter he sent to the Honorable Paul J. Sullivan, in which he asserted the Discharge as a defense to their claims.  Because the Creditors continued to prosecute their claims after learning of the Discharge, the Debtor asks this court to hold them in contempt of its injunction.[4]

The Creditors do not deny that they had knowledge of the Discharge beginning in December, 2014 as the Debtor alleges.  Based upon the papers submitted, the court finds that the Creditors had notice of the Discharge shortly after commencing the Kent County Lawsuit.  It is not enough, however, for the Debtor to prove that the Creditors had knowledge of the Discharge; he must also prove that their actions in continuing to prosecute the Kent County Lawsuit *violated* the Discharge.  This second requirement presents an insuperable hurdle for the Debtor under the circumstances of his case.

### 3. The Parties' Arguments

In their *pro se* response, the Creditors make two main arguments for why their prosecution of the Kent County Lawsuit does not violate the Discharge.  First, they argue that irrespective of when the events described in their state court complaint took place, they will not have a claim until the Kent County Circuit Court rules in their favor:

---

[4] The Debtor initially alleged that he listed the Creditors in his schedules, but he later conceded he did not include them on Schedule F or in the mailing matrix.  *Compare* Debtor's Motion for Rule to Show Cause (DN 98) at ¶ 5 *with* Debtor's Reply to Show Cause Order ("Debtor's Reply," DN 106) at p. 1.

> Until the 17th Circuit Court of Kent County issues a final *Judgment Order* that formalizes the *alleged claims* of Mary A. Comella and Michael R. Seiloff in Kent County Case #14-10617-CZ into a declaration of a specific monetary *liability* in the form of a *Judgment Debt* that Defendant Steven J. Wilcox and the other defendants will be legally bound to pay, no *debt* obligation between Defendant Steven J. Wilcox and Plaintiffs Mary A. Comella/Michael R. Seiloff even exists.

*See* Brief in Support of the Response of Mary A. Comella and Michael R. Seiloff to the Show Cause Order Re: Alleged Violation of the Discharge Order ("Response Br.," DN 102) at p. 9.  As the Debtor points out, the argument lacks merit, given the broad definition of "claim" (and corresponding definition of "debt") that applies.  More specifically:

> The term "claim" means—
>
> … right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . .

11 U.S.C. § 101(5).  The definition of "debt" is derived from the definition of "claim," but framed from the debtor's (rather than a creditor's) perspective: "[t]he term 'debt' means liability on a claim." *Id.* § 101(12); *Glance v. Carroll (In re Glance)*, 487 F.3d 317, 320 (6th Cir. 2007) ("claim" and "debt" are "co-extensive").  The Supreme Court has said that "[c]laim" has "the broadest available definition." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (citations omitted).  The definition is deliberately broad so that bankruptcy courts may provide convenient and comprehensive relief to debtors and those asserting claims against them.

Fairly read, the Creditors' argument on this point is that because each of their claims has not been reduced to judgment and is unliquidated, it is not a "claim."  The text of § 101(5) and the policies supporting the inclusive definition of "claim" easily refute the first argument.

The Creditors' second argument, which relies on § 523(a)(6) for the proposition that a discharge does not affect claims arising from willful and malicious injuries to persons or

property, has more merit, albeit for slightly different reasons than they advance.  The gist of the complaint in the Kent County Lawsuit is that the Debtor intentionally injured the Creditors through misconduct which they describe as follows:

> . . .multiple intentional torts of willfully initiating and maintaining his sixteen month malicious prosecution quest against Mary A. Comella/Michael R. Seiloff and his nineteen month quest to actively interfere with the rightful ownership of the Prudential Life Insurance Policy R314XXXX owned by Mary A. Comella and her sister.

Response Br. at 11.  Their state court papers also describe the Debtor's role in a fraudulent scheme (in cahoots with his co-defendants) to obtain control of an insurance policy in which the Creditors claims some interest.  Indeed, it is more than plausible that abuse of process or malicious prosecution as part of a fraudulent scheme, if established, can give rise to a non-dischargeable debt under § 523(a)(6).  *See In re Abbo v. Rossi, McCreery & Associates, Inc. (In re Abbo)*, 168 F.3d 930 (6th Cir. 1999) (debt arising from abuse of criminal process may be excepted from discharge under § 523(a)(6)); *Stahl v. Gross (In re Gross)*, 288 B.R. 655 (Bankr. E.D.N.Y. 2003) (same for abuse of civil process); *see generally National Sign & Signal v. Livingston*, 422 B.R. 645, 658 (W.D. Mich. 2009) (noting that courts must focus on the debtor's conduct, and listing types of debts that may be excepted from discharge under § 523(a)(6)).  The allegations the Creditors assert against the Debtor in the Kent County Lawsuit, relating to his activities clearly predating his bankruptcy petition, would almost certainly, if established to the satisfaction of the Kent County Circuit Court, support a finding of fraud or willful and malicious injury to the Creditors resulting in a debt to them "of a kind" described in § 523(a)(2) or (a)(6).

The Debtor responds by contending that because the Creditors "knew of the bankruptcy proceedings but sat on their claims, they are past the point of being able to file a complaint to

determine the dischargeability of their 'alleged claim.'"  *See* Debtor's Reply at p. 2.  This is not entirely accurate.

It is true, as Debtor suggests, that (in general) creditors who seek to except debts from discharge under § 523(a)(2), (a)(4), or (a)(6) must file their complaints with the bankruptcy court promptly,[5] and if they fail to do so, such debts are discharged even if they might otherwise qualify for an exception to discharge:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c).  Complaints under this section must be filed within the time prescribed in Fed. R. Bankr. P. 4007(c) -- here, December 9, 2013.  The docket reveals that the Creditors never filed such a complaint in the United States Bankruptcy Court, so the Debtor, therefore, invokes the protection of § 523(c) and Fed. R. Bankr. P. 4007(c).

The problem for the Debtor, however, is that the December 9, 2013 deadline for complaints under § 523(c) probably does not apply to the Creditors, certainly not if they first learned of the Debtor's bankruptcy case in December, 2014 — a year or so after the deadline.  If they lacked timely notice (as seems likely), their claims may be excepted from the Discharge under § 523(a)(3), which governs the claims of omitted creditors.  There is no deadline to file a complaint under that section.[6]  It only makes sense not to hold creditors to a deadline of which

---

[5] Such complaints must be filed "no later than 60 days after the first date set for the meeting of creditors under § 341(a)."  Fed. R. Bankr. P. 4007(c) (referring to complaints under § 523(c)).  In the Debtor's case, assuming the Creditors had timely notice, the deadline for objecting to the discharge of their claims by filing a complaint under § 523(c) was December 9, 2013.  A review of the bankruptcy docket shows that they did not file such a complaint.

[6] Under Fed. R. Bankr. P. 4007(b), a "complaint other than under § 523(c) may be filed at any time."  A complaint to except a debt from discharge under § 523(a)(3) is a complaint "other than under § 523(c)," even if the debt is "of a kind" described in § 523(a)(2), (a)(4), and (a)(6).

they were not aware, especially given a debtor's duty —the first duty listed in the statute— to make them aware by filing a list of all creditors so that they may have notice of the proceedings in time to participate. *See* 11 U.S.C. § 521(a)(1)(A).

This conclusion follows from a close reading of the statutory exceptions to discharge in § 523(a)(3) applicable to claims (and creditors) omitted from the schedules:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt—
>
> (3) neither listed nor scheduled under section 521 (a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

11 U.S.C. § 523(a)(3). This exception to discharge for omitted creditors is distinct from the exception prescribed in § 523(a)(2), (a)(4), and (a)(6), and (as noted above) is not among the exceptions to discharge referred to in § 523(c). Indeed, the exception most likely applicable to the Creditors, *i.e.* § 523(a)(3)(B), is expressly excluded from the scope of § 523(c).[7]

---

[7] Under § 523(c), debts of a kind described in § 523(a)(2), (a)(4), and (a)(6) will be excepted from a debtor's discharge only if the creditor timely files a complaint seeking that relief; in the absence of a timely complaint, such debts are discharged. This is the gist of the Debtor's argument in this case. The rule, however, does not apply to debts described in § 523(a)(3)(B). *See* 11 U.S.C. § 523(c) (expressly excluding debts under § 523(a)(3)(B) from the timely complaint requirement). The parties and the courts may be forgiven for not immediately grasping the dazzling complexity and interplay of these statutes, but as the court tried to explain last year, "a debtor who omits a creditor from his or her schedules runs the risk that the creditor's claim will be excepted from discharge under § 523(a)(3)(B) and that a court other than the United States Bankruptcy Court may be called upon to make that determination." *In re Steward*, 509 B.R. 123, 126-27 (Bankr. W.D. Mich. 2014).

On the present record and given the present procedural posture,[8] the court cannot and need not determine whether claims of the Creditors are discharged. Rather, because the Debtor seeks to hold the Creditors in contempt, the court need only decide whether the Creditors' commencement and continued prosecution of the Kent County Lawsuit is contemptuous.

The Debtor's principal impediment to a contempt finding, perhaps a "Catch 22," is that whether the Creditors violated the discharge injunction (or not) depends on whether their claims are excepted from discharge under § 523(a)(3), as omitted creditors with a debt that may fall under § 523(a)(2), (a)(4), or (a)(6) for fraudulent conduct or willful and malicious injury. Therefore, in order to make the initial determination that the Creditors' claims are excepted from discharge under § 523(a)(3) a court must first determine whether the claims are of a kind listed under § 523(a)(2) (fraud), (a)(4) (embezzlement or defalcation by fiduciary), or (a)(6) (willful and malicious injury to person or property).

On the one hand, if the claims of the Creditors, even though omitted, are *not* "of a kind specified in paragraph (2), (4), or (6)" of § 523(a), the claims should be discharged (at least if this court were to decide the question) because the Debtor's case is a "no asset" case in which the court never set a deadline to file ordinary claims. *See Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467 (6th Cir. 1998) (the claims of most omitted creditors in a "no asset" case are discharged at the instant they learn of the case because there is no deadline to file claims in a "no asset case" and an omitted creditor's proof of claim would always be "timely"); *but see First Place Bank v. Casino Concepts by Design, Inc.*, No. 30683, 2013 WL 331572 (Mich. App. Jan. 29, 2013) (declining to follow *Madaj*).

---

[8] A request before a bankruptcy court to determine the dischargeability of a debt must take the form of an adversary proceeding. Fed. R. Bankr. P. 7001(6). Neither party has filed an adversary proceeding, and the issue is not properly before the court.

On the other hand, because the Debtor did not list the claims of the Creditors in his schedules, the Kent County Circuit Court could conclude that their claims survive the Discharge if it finds that the Creditors did not have timely notice of the bankruptcy filing and their claims are in the nature of fraud, embezzlement, defalcation or an intentional tort.[9]   Therefore, the Creditors could obtain a judgment against the Debtor without offending the Discharge, or the automatic stay,[10] if the Kent County Circuit Court decides that (1) the Creditors lacked notice or actual knowledge of the Debtor's case in time to file a complaint in the bankruptcy court under § 523(a)(2), (a)(4), or (a)(6) on or before December 9, 2013; (2) they have enforceable claims against the Debtor;[11] and (3) their claims are "of a kind specified in paragraph (2), (4), or (6)" of § 523(a).

Given the uncertainty about whether the claims of the Creditors are dischargeable or not, it is not clear whether the assertion of those claims violated the Discharge.  *See Gunter*, 388 B.R. at 72 (court must find violation of discharge before imposing sanction for contempt). Moreover, the court cannot blame the Creditors for their confusion which, after all, proceeds in large measure from the Debtor's incomplete disclosure in Schedule F and the mailing matrix.  Under the circumstances, and up to this point in time, their filing and prosecution of the Kent County Lawsuit is not contemptuous.  If, however, they continue to pursue their claims against the Debtor without also seeking a declaration from Judge Sullivan that their claims are excepted

---

[9] *See In re Steward*, 509 B.R. at 126-27 (state courts have concurrent jurisdiction to declare debts excepted from discharge under § 523(a)(3)); *see also* 28 U.S.C. § 1334(b)(". . . the district courts shall have original *but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11").

[10] The automatic stay terminated as to the Debtor upon the entry of the Discharge.  *See* 11 U.S.C. § 363(c)(2)(C).  In a sense, the discharge injunction under § 524(a) picks up where the automatic stay leaves off under § 362(c).

[11] Whether the Creditors have a "claim" against the Debtor generally depends upon proof that they have a right to payment recognized under state law.  *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 451 (2007).  For this reason, the Debtor will be free to persuade the Kent County Circuit Court that *Young v. Motor City Apts.*, 350 N.W.2d 790 (Mich. App. 1984), or other authority precludes the Creditors' recovery as a matter of state law.  The Creditors, of course, are equally free to persuade Judge Sullivan that the Debtor's conduct, if proven, amounts to fraud or a willful and malicious injury to them or their property.

from discharge under § 523(a)(3), they run the risk of violating the Discharge, especially now that they have a better understanding of their rights.

The court assumes that the issues of whether the Creditors can prove their claims against the Debtor, and whether the claims (if proven) survive discharge, will be resolved in the pending Kent County Lawsuit not only because that court has concurrent jurisdiction, but also because the deadline for the Debtor to remove the Creditors' claims to the bankruptcy court under 28 U.S.C. § 1452 has passed. *See* Fed. R. Bankr. P. 9027(a)(3). Given the pendency of the Kent County Lawsuit and the fact that the Debtor's bankruptcy case has been closed twice, the court would be inclined to abstain from hearing any adversary proceeding under § 523(a)(3), or any claims timely removed under 28 U.S.C. § 1452.

4. Motion to Amend Schedules to Add Creditors

For the reasons set forth above, any amendment of the Debtor's schedules at this point in time will not affect the dischargeability of the Creditors' claims. *See Madaj, supra.* Nevertheless, for the sake of the record, and given the liberality governing amendments of schedules, the court will grant the motion and permit the Debtor to correct the omission.

IV. CONCLUSION & ORDER

Because the Debtor has not established that the Creditors violated the Discharge, and because the court does not regard the prosecution of the Kent County Lawsuit up to this point in time as contemptuous, the court will not impose any sanction against the Creditors. Instead, the court trusts that the Creditors or the Debtor will ask the Kent County Circuit Court to resolve their dispute, including whether the Creditors' claims, if established, are of a kind described in

11 U.S.C. § 523(a)(2), (a)(4) or (a)(6), and therefore survive the Discharge under § 523(a)(3)(B). Again, the Kent County Circuit Court has concurrent jurisdiction to grant this relief, and neither the Discharge nor the automatic stay will stand in the way of a prompt resolution in that court.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. The Debtor's request to hold the Creditors in contempt of the Discharge is DENIED;

2. The Debtor's motion to amend schedules (DN 100) is GRANTED and the Debtor may file his amendment listing the Creditors within 28 days after entry of this Memorandum of Decision and Order;

3. The Clerk shall close the Debtor's bankruptcy case on May 22, 2015, without further order, provided there are no appeals or motions pending at that time;

4. The Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the United States Trustee; and

5. The Clerk shall mail a courtesy copy of this Memorandum of Decision and Order to the Honorable Paul J. Sullivan, Circuit Judge, Kent County Circuit Court.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor and by first class mail, addressed to each as follows:

Mary Ann Comella
4370 Chicago Dr. SW, #B 302
Grandville, MI 49418

Michael R. Seiloff
P.O. Box 345
Alto, MI 49302

Steven Jon Wilcox, No. 223862
Michigan Reformatory
1342 West Main Street
Ionia, MI 48846

END OF ORDER

**IT IS SO ORDERED.**

**Dated April 21, 2015**

Scott W. Dales
United States Bankruptcy Judge